HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| EDWARD SCHIFFER,<br><br>        Plaintiff,<br><br>   v.<br><br>CAROLYN COLVIN,<br><br>        Defendant. | CASE NO. C14-5900 RBL<br><br>ORDER AFFIRMING DENIAL OF BENEFITS |

Plaintiff Edward Schiffer claims he has been disabled since before he first sought benefits on December 16, 2008. He suffers from mental impairments including borderline intellectual functioning, schizoaffective disorder, and learning disorder.

The ALJ denied Schiffer's claim in March 2013. The ALJ's decision is the Commissioner's for purposes of his 42 U.S.C. §405(g) appeal. He found Schiffer's residual function capacity allowed him to do a full range of work at all exertional levels, and that he could perform the mental activities required in a competitive work environment:

> I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels and the claimant is able to perform mental activities generally required by competitive, remunerative work as follows; he can understand, remember and carry out simple instructions required of jobs classified at a level of SVP 1 and 2, or unskilled work. The claimant can make judgments on

   simple, work-related decision, and can respond appropriately to supervision, coworkers and deal with changes all within a stable (not subject to sudden or extreme change or fluctuation) work environment. The claimant can perform work with only occasional exposure to, or interaction with, the public.

Tr. 59.  He found that Schiffer was not disabled.

  Schiffer claims that this RFC is not supported by the evidence upon which the ALJ claimed to have relied.  He claims that he ALJ erred by claiming to give "great weight" to Schiffer's mother's testimony about his mental abilities and limitations, while simultaneously failing to address other testimony that supports the conclusion that he was disabled. .

  Schiffer also claims that the ALJ failed to discuss evidence of his paranoia and delusional thoughts, as reported by his treating nurse at Suncoast Mental Health.  He claims that these records show that Schiffer's thoughts are disorganized, that he is unfocused, and that his thinking is "erratic."  Finally, Schiffer relies on his GED instructor's testimony that he has a very strong aversion to being told what to do, and with following through, impacting his ability to hold a job.  In short, Schiffer claims that the ALJ "cherry-picked" the evidence that supports his conclusions, while ignoring other evidence that would, he claims, support a disability finding. He asks the Court to remand the case for further proceedings.

## I. DISCUSSION

**A.  Standard of Review.**

  To obtain disability insurance benefits, a claimant must have been disabled on or before his or her last date insured. *Flaten v. Sec'y of HHS*, 44 F.3d 1453, 1460–65 (9th Cir. 1995). A five-step "sequential evaluation process" is used to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. The claimant bears the burden during steps one through four, but the burden shifts to the Commissioner at step five. *Hoffman*, 785 F.2d at 1424-25.

ORDER AFFIRMING DENIAL OF BENEFITS - 2

At step **one**, the claimant must show that he or she is not engaged in substantial gainful activity. *See* C.F.R. § 404.1520(b). At step **two**, the ALJ must determine whether the claimant suffers from "severe impairments" within the meaning of the regulations. *See* C.F.R. § 404.1520(c). At step **three**, the claimant can conclusively establish that he or she is disabled by showing that any of his or her impairments equal one of the impairments listed in Appendix 1 to 20 C.F.R. § 404. *See* 20 C.F.R. § 404.1520(d). If the claimant is unable to do so, at step **four**, the ALJ must determine whether the claimant is able to perform his or her past relevant work.[1] *See* 20 C.F.R. 404.1520(f).

If she is unable to perform past relevant work, the claimant is disabled unless, at step **five**, the ALJ concludes that he or she can perform other work available in the national economy. *See* 20 C.F.R. 404.1520(g).

If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's RFC assessment is used at step **four** to determine whether he or she can do his or her past relevant work, and at step **five** to determine whether he or she can do other work. *Id.*

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." *Id.* It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *Id.* However, an inability to work must result from the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those

---

[1] Past relevant work is defined as work that the claimant has performed in the past 15 years. *See* 20 C.F.R. § 404.1520(f).

limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

This Court must uphold the Commissioner's determination that a claimant is not disabled, if the Commissioner applied "proper legal standards," and her determination is supported by "substantial evidence in the record as a whole." *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (*citing Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987)).

Evidence is "substantial" if a reasonable mind might accept it as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193 ("The Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). The substantial evidence test requires that the reviewing court determine whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). Furthermore, if the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (internal citation omitted).

1    If this Court reverses an ALJ's decision, "the proper course" is to remand to the agency

2 or additional investigation or explanation." *Benecke v. Barnhart,* 379 F.3d 587, 595 (9th Cir.

3 2004).

4 **B. Substantial evidence supports the ALJ's determination.**

5    Schiffer claims that the ALJ's determination is not supported by substantial evidence

6 because it claims to rely greatly on his mother's testimony, but it rejects other parts of her

7 testimony without giving a "germane reason" for doing so.

8    The Commissioner points out that the ALJ properly determined that Schiffer was not

9 entirely credible, justifying his disregarding some of his testimony.  Specifically, the record

10 demonstrates that Schiffer's claimed impairments were inconsistent with his reported activities—

11 it is undisputed that he did chores, worked on a computer, took care of himself, went to the

12 library, rode his bike, went out every day, looked for jobs, talked to people and peers at length,

13 played games, attended GED classes and studied.  He also denied using drugs when there is

14 ample evidence that he used them.  Further, she argues, his claims are inconsistent with the

15 objective medical evidence—his medical treaters reported that his symptoms were "stable" when

16 he took his medication and attended treatment, and Schiffer admits that he had held jobs and left

17 them for reasons other than his impairments.

18    The Commissioner argues that the ALJ's determination is supported by substantial

19 evidence and Schiffer's claim that other evidence should have been emphasized is not enough for

20 overturn the decision.

21    Schiffer's mother testified that his problems getting along with others related to *their*

22 impression that he was "a little off," "a weird kid," "strange" and sometimes "aggressive" (but

23 not "violent").  She claims that he had never lost a job due to his ability to get along with others.

24 This is the evidence to which the ALJ accorded "great weight" and it supports his RFC

1 determination that Schiffer could perform work consistent with these impairments.  She also

2 argues, persuasively, that even if the evidence does not support the ALJ's interpretation, the

3 germane reasons he gave for discounting Schiffer's own testimony permit him to similarly

4 discount the mother's similar testimony.  *See Molina v. Astrue,* 674 F.3d , 1104, 1114 (9th Cir.

5 2012), *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

6       The Commissioner also argues that the ALJ properly discounted some of the GED

7 instructor's (Garcia's) testimony. He did so in part because Garcia's claims about Schiffer's

8 limitations were undermined by evidence in the form of mental status examinations: his full scale

9 IQ is 79 (the high end of the borderline range) and low average on verbal comprehension,

10 perceptual reasoning and processing speed.  The ALJ's rejection of Garcia's claims about

11 limitations that were not consistent with this evidence was proper and the reasons were germane.

12       The ALJ instead gave credence to medical (and lay) evidence that Schiffer's mental

13 health improved (and his claimed impairments lessened) when he took his medication.  See Tr.

14 60, 62, 6679, 674, 676.  He had "no problems with his medication as early as July 2009 Id., and

15 similarly positive reports about its use and effects continued 2010 through 2012.  Tr. 60.  This

16 evidence is also sufficient to overcome Schiffer's Nurse Practitioner's (Mattea's) testimony that

17 he had "disjointed thoughts,"  and Dr. Bursten's  record that he was "episodically tangential" and

18 "off topic."  The ALJ was not obligated to accept these rather bland assessments over other

19 medical evidence supporting a contrary conclusion: the long list of activities he successfully and

20 repeatedly undertook, and the medical evidence of his mental status.

21       The Commissioner argues that Schiffer asks the Court to accept this evidence over the

22 ALJ's rational interpretation of substantial other evidence supporting a contrary determination.

23 She correctly argues that even if the evidence would support more than one rational

24

1 interpretation, the Court is bound to defer to the Commissioner's decision. *See Batson v.
2 Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). The court agrees. The
3 Commissioner's interpretation and determination finds ample support in the record and is legally
4 correct.

      Mr. Schiffer's appeal of the denial of benefits is DENIED and the Commissioner's determination is AFFIRMED.

      IT IS SO ORDERED.

      Dated this 25th day of September, 2015.

Ronald B. Leighton
United States District Judge